### In the Matter of the White Mountains Bank.

When the property of a bank has been assigned on application of the bank commissioners under the statute, the bills of the bank cannot be received by the assignee in payment of debts due to the bank.

On the 23d of June, 1865, the Bank Commissioners applied, under the statute, to a justice of this court for the appointment of an assignee to take charge of the assets and affairs of the White Mountains Bank and for an injunction prohibiting the bank from issuing bills and transacting business. On the 26th of June the bank was enjoined and an assignee appointed. It was also ordered that bills of the bank should not be received by the assignee in payment of debts due to the bank.

On another application of the Bank Commissioners, creditors were enjoined not to commence or prosecute suits against the bank, and the proceedings were adjourned into the next term of this court to be held at Lancaster on the third Tuesday of July.

At that term Benjamin F. Whidden and sundry other debtors to the bank moved that the injunction be so far modified that bills of the bank might be received by the assignee in payment of debts due to the bank. It was also moved that holders of the bills might be permitted to deposit with the assignee bills of the bank to an amount sufficient to pay their several debts; that if the available assets of the bank should be sufficient to redeem its entire circulation they might be allowed to pay their debts in the bills; and in case the assets should not prove sufficient to redeem the bills in full, they should only be compelled to pay, each for himself, his proper proportion of the deficiency in other money.

*Benton, Ray & Whidden,* for the bill-holders.

*Buckingham,* contra.

PERLEY, C. J. In this case the property of the bank has been

transferred to an assignee under the statutes. which provide for the distribution of the assets of failing banks among creditors; and the rights of bill-holders and other creditors of this bank must be determined by the provisions of the statutes which relate to this subject.

Where an assignee has been appointed upon application of the bank commissioners, the statute provides that "the assignee shall take possession of all the estate, property, rights and credits of every kind and description whatever belonging to such bank, and may demand, receive, sue for and recover the same wherever they may be found, and may require the officers of such bank or any person having any of said property to execute to said assignee any transfer or conveyance thereof; and may collect all debts due, and make sale and conveyance of all property belonging to such bank, and do all other acts necessary to convert such assets into money." Comp. St. 325, sec. 26.

The statute provides for the distribution of the assets in the following terms : "All the assets of such bank shall be holden in trust, first, to pay all the expenses of the assignment; secondly, for the payment of all the bills issued by such bank pro rata; thirdly, for the payment of all other debts, claims, and obligations owing by said bank, and the remainder to be divided among the stockholders in proportion to the amount of stock owned by each." Comp. St. 325, sec. 30. And this "court, or any justice thereof in vacation, may make such orders as shall be necessary to carry such assignment into full effect." Comp. St. 325, sec. 27.

By another provision of the statutes, the bank commissioners in certain cases are required to make a representation of the facts to one of the justices of this court, "and such justice shall forthwith issue an injunction to the president, directors and company of said bank, prohibiting them from issuing bills or transacting any business until such injunction shall be dissolved." Comp. St. 324, sec. 21.

Under these provisions of the statutes, the property of the bank has been transferred to an assignee and the bank enjoined from transacting business, and, in order to carry into effect the objects of the assignment, a justice of this court in the vacation made an order, as is provided by the statute, that the assignee should not receive bills of the bank in payment of debts due to the bank, and the question now under consideration is whether that order shall be vacated or modified according to the motions made by and in behalf of the bill-holders.

In considering this question, it is important to keep in view the nature and object of this assignment and these proceedings under the statute. By operation of the assignment all the property of the bank is transferred to the assignee to hold in trust, not for the bank, but for the creditors, and ultimately, if there should be surplus, for the individual stockholders. The legal estate is transferred to the assignee and the equitable interest is in the creditors and stockholders. Unless, therefore, the proceedings should be superseded,—a contingency which does not appear to be contemplated by the statute,—the bank as a corporation can have no interest, legal or equitable, in any property. They are enjoined from doing any business, and have no stock or capital on which business

can be done.   By this assignment, therefore, under the statute, the corporation, as a banking institution, is practically dissolved.   It may have legal existence and have the usual officers, but only for the purpose of carrying into effect the objects of the assignment.   The operations of the bank are stopped, are never expected to be resumed ; for the whole object of the assignment is to collect and preserve the property of the bank and make distribution of the assets according to the provisions of the statute.   To ensure this distribution of the assets, and prevent the bank from applying the funds in any other way or proportion among different claimants is evidently the leading motive for taking from the bank the power to go on as a corporation.   What, then, is the distribution which the statute requires to be made of the assets by the assignee of broken banks in New Hampshire?

The statute provides that, after the expenses of the assignment are paid, the assignee shall hold the funds, secondly, in trust to pay "all the bills issued by such bank pro rata."   The statute is express and emphatic that *all the bills* shall be paid *pro rata;* and every holder of a bill has under the statute a clear right to insist that he shall be paid in the same proportion with all other holders of bills.   It is the duty of the assignee to see that the bill holders are so paid ; he holds the funds under the statute on an express trust so to apply them.   But if debtors to the bank were allowed to pay their debts in the depreciated bills, they would in effect receive pay for their bills in full, and the other holders of bills, in case of a deficiency, would receive less than their proportionate share of the assets ; which would be in direct conflict with the express provision and the controlling design of the statute, which evidently is to put all holders of the bills of a failing bank upon a footing of equality.   The language and the plain intention of the statute would apply this rule to the case of a debtor who held the bills of the bank at the time of the failure and assignment ; and if a debtor were allowed to buy in the discredited bills and discharge his debt with them he would not merely receive payment of the bills in full by applying them to his debt, but he would make a dishonest profit at the expense of the right secured to the bill-holders by the statute.

A debtor to the bank, who held bills at the time of the assignment, has no reason to complain if the bills are refused in payment of his debt. He must be understood to have taken the bills for cash in the usual course of business as others did, who were not in debt to the bank, trusting to the general credit of the corporation.   Because he had dealings with the bank and owed the bank money, he cannot insist that, in respect to the bills which he took as money in the usual course of business, he shall be put on a better footing than others who took their bills in the same way.

I am not aware of anything in the statutes relating to the subject of banks, that can be supposed to countenance the claim to have the bills of the bank received by the assignee in payment of debts, unless it be the provision (Comp. St. 324, sec. 19) that "whenever any bank shall suspend specie payments any person indebted to such bank, may suspend the payment of his debt until such bank shall resume specie payments,

unless such bank will receive its own bills, or other current bills, in payment thereof."

This provision relates only to the case where a bank has suspended specie payments and is expected to resume specie payments again. It evidently applies to a bank still in credit and still in business as a bank, and not to the case of a broken bank, whose effects and business are transferred under the statute to an assignee for the purpose of finally liquidating the affairs and distributing the assets of the bank. By that provision of the statute no bank shall insist on receiving specie in payments of debts while it suspends specie payments, but shall be content to receive its own or *other current bills,* unless the bank will wait for the debt until specie payments are resumed. It is plain that this can have no reference to a case like the present.

I am not informed of any decision in this State that bears upon this question. There are some cases on this subject in other jurisdictions; but they turn upon the construction of statutes so essentially different from ours, that they have afforded us little assistance. *Bank* v. *Howard,* 13 Mass. 235; *Bank of Penn.* v. *Spangler,* 32 Penn. 474; *Moise* v. *Chapman,* 24 Georgia 249; *Clark* v. *Hawkins,* 5 R. I. 219.

*Motions denied.*